**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| ELIJAH CARIMBOCAS, LINDA DLHOPOLSKY, and MORGAN GRANT, on behalf of themselves and others similarly situated, | |
| | Civil Action No.: 1:22-cv-02188-CNS-STV |
| *Plaintiffs*, | Hon. Charlotte N. Sweeney |
| v. | Magistrate Judge Scott T. Varholak |
| TTEC SERVICES CORPORATION, TTEC SERVICES CORPORATION EMPLOYEE BENEFITS COMMITTEE, EDWARD BALDWIN, K. TODD BAXTER, PAUL MILLER, REGINA PAOLILLO, EMILY PASTORIUS, JOHN and JANE DOES 1-20, | |
| *Defendants.* | |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

Darren E. Nadel
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202-5835
DNadel@littler.com
Tel: 303.362.2861
Fax: 303.362.8230

*Counsel for Defendants*

Deborah S. Davidson
Matthew A. Russell
Samuel D. Block
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, Illinois 60606
Tel.: 312-324-1000
Fax: 312-324-1001
deborah.davidson@morganlewis.com
matthew.russell@morganlewis.com
samuel.block@morganlewis.com

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

RELEVANT FACTS AND ALLEGATIONS ..................................................... 4

    I.    TTEC and the Plan ................................................................................ 4

    II.    Summary of Plaintiffs' Allegations ...................................................... 5

    III.    Certification of Conference ................................................................. 5

ARGUMENT ...................................................................................................... 6

    I.    Count I Does Not State a Plausible Claim for Breach of Fiduciary Duty. ........... 7

        A.    Plaintiffs' Recordkeeping-Fee Allegations Do Not Support a Plausible Breach ................................................. 7

        B.    Plaintiffs' Two Investment Allegations Do Support a Plausible Breach. ............................................... 11

            1.    Plaintiffs' Performance Allegation Does Not Support a Breach. .............................. 12

            2.    Plaintiffs' Investment-Fee Allegation Do Not Support a Breach. ............................ 13

            3.    A Challenge to 2 Funds Out of 54 Does Not Suggest a Breach. ............................. 14

    II.    Plaintiffs' Derivative Failure-to-Monitor Allegations Fail to State a Claim (Count II). ............................................... 15

CONCLUSION ................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ..............................................................................8, 10

*Ashcroft v. Iqbal*,
556 U.S. 663 (2009)............................................................................................1, 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................1

*Birse v. CenturyLink, Inc.*,
2019 WL 1292861 (D. Colo. Mar. 20, 2019) .......................................2, 12, 14, 15

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
508 U.S. 602 (1993)................................................................................................9

*Davis v. Washington U. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) .............................................................................9, 13

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)............................................................................................6, 10

*Gonzalez v. Northwell Health, Inc.*,
2022 WL 4639673 (E.D.N.Y. Sept. 30, 2022) .......................................................10

*Hughes v. Nw. Univ.*,
142 S. Ct. 737 (2022).....................................................................................1, 4, 6, 8

*Johnson v. Providence Health & Servs.*,
2018 WL 1427421 (W.D. Wash. Mar. 22, 2018) .....................................................4

*Jones v. Dish Network Corp.*,
2023 WL 2644081 (D. Colo. Mar. 27, 2023) ................................................ passim

*Kurtz v. Vail Corp.*,
511 F. Supp. 3d 1185 (D. Colo. 2021)............................................................ passim

*Matney v. Barrick Gold of N.A., Inc.*,
2022 WL 1186532 (D. Utah Apr. 21, 2022), *appeal filed*, No. 22-4045 (10th Cir. May
20, 2022) ......................................................................................................... passim

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ...................................................................................10

*McCaffree Fin. Corp. v. ADP, Inc.*,
   2023 WL 2728787 (D.N.J. Mar. 31, 2023).............................................................10

*Patterson v. Morgan Stanley*,
   2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ..........................................................14

*Smith v. CommonSpirit Health*,
   2021 WL 4097052 (E.D. Ky. Sept. 8, 2021), *aff'd, CommonSpirit*, 37 F.4th 1160 ...............10

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) ...........................................................................7, 12

*Terraza v. Safeway Inc.*,
   2019 WL 1059688 (N.D. Cal. Mar. 6, 2019)...........................................................8

*VDARE Found. v. City of Colo. Springs*,
   11 F.4th 1151 (10th Cir. 2021) ..............................................................................6

*White v. Chevron Corp.*,
   2016 WL 4502808 (N.D. Cal. 2016) ....................................................................14

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
   325 F. App'x 31 (2d Cir. 2009) ...........................................................................10

## Statutes

29 U.S.C. § 1002(34) ....................................................................................................4

29 U.S.C. § 1104(a)(1)(B) ...........................................................................................1

ERISA .................................................................................................................3, 5, 7

## Rules

Fed. R. Civ. P. 12(b)(6)................................................................................................2

Fed. R. Civ. P. 26(f) ....................................................................................................6

## Regulations

29 C.F.R. § 2550.404a-1(b) .......................................................................................14

## INTRODUCTION

This is one of the hundreds of class actions filed in recent years challenging the fees and investments in 401(k) retirement plans as "imprudent" under ERISA. In their original Complaint, Plaintiffs alleged a litany of supposed flaws with the TTEC Profit Sharing Plan ("Plan"),[1] while also conceding that Defendants made many positive changes to the Plan's fees and investments. Defendants demonstrated in their Motion to Dismiss that such fiduciary action cannot support a claim of fiduciary inaction. In response, Plaintiffs amended their Complaint to drop all claims except for (1) a challenge to the performance or fees of *two* of 54 investments offered in the Plan since 2016; and (2) a claim that recordkeeping fees could have been lower. This limited challenge does not plausibly suggest fiduciary misconduct and is still belied by Plaintiffs' own allegations.

ERISA's duty of prudence focuses on the process used to make plan-related decisions, not its results. Congress did not mandate that a 401(k) plan must offer any particular investments or services. Rather, cognizant of the "range of reasonable judgments a fiduciary may make based on her experience and expertise," *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022), Congress left those decisions to the fiduciaries, requiring only that they act prudently, meaning as similarly situated fiduciaries would act in "the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). As the statute suggests, whether a fiduciary satisfies this duty is a "context-specific inquiry" that must account for all relevant circumstances. *Hughes*, 142 S. Ct. at 740, 742. Here, Plaintiffs do not allege anything about Defendants' process for making Plan-related decisions. Under normal *Twombly/Iqbal* pleading standards, therefore, Plaintiffs must allege sufficient circumstantial facts

---

[1] The Amended Complaint (ECF No. 35) names TTEC, its Employee Benefits Committee ("Committee"), and alleged Committee members Edward Baldwin, K. Todd Baxter, Paul Miller, Regina Paolillo, and Emily Pastorius (together, "Defendants").

that, taken together, create a reasonable inference that Defendants' process was deficient.  *See, e.g.*, *Jones v. Dish Network Corp.*, 2023 WL 2644081, at *6-7 (D. Colo. Mar. 27, 2023).

The facts alleged in the Amended Complaint (hereinafter the "Complaint") come nowhere near meeting this pleading burden.  To the contrary, the Amended Complaint confirms that Defendants (1) used a fixed, per-capita fee structure to pay for recordkeeping services, negotiated fee reductions every other year, and conducted competitive bidding for those services; (2) removed the one fund Plaintiffs challenge based on investment fees; and (3) made multiple adjustments to the Plan's investment line-up throughout the putative class period.  The most Plaintiffs can do is pick at the edges of these decisions, claiming Defendants should have made certain changes sooner or suggesting that these changes were somehow an admission of imprudence.

This is the same Monday-morning-quarterback strategy that courts in the Tenth Circuit have repeatedly rejected in dismissing complaints that alleged far more than Plaintiffs claim here.  *See, e.g.*, *Dish Network*, 2023 WL 2644081; *Matney v. Barrick Gold of N.A., Inc.*, 2022 WL 1186532, at *4 (D. Utah Apr. 21, 2022), *appeal filed*, No. 22-4045 (10th Cir. May 20, 2022); *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1196-97 (D. Colo. 2021); *Birse v. CenturyLink, Inc.*, 2019 WL 1292861, at *3 (D. Colo. Mar. 20, 2019).  This Court should follow their lead and dismiss the Complaint with prejudice pursuant to Rule 12(b)(6).

***First***, Plaintiffs' recordkeeping-fee claim fails as a matter of law.  Plaintiffs say Defendants failed to monitor the Plan's recordkeeping fees, but their factual allegations belie the claim.  Plaintiffs concede that Defendants repeatedly reduced fees and even changed recordkeepers as a result of a Request for Proposal ("RFP").  And while Plaintiffs allege Defendants "flagrantly" breached their duties by causing the Plan to pay recordkeeping fees that were modestly higher than

other plans, it is impossible to determine if any fee is "excessive" without knowing what that fee secured in exchange. ECF No. 35, ¶¶ 7, 59-71. This is why courts require a "meaningful benchmark" for assessing whether a 401(k) plan overpaid for the type, scope, and quality of services it actually received. *See, e.g.*, *Dish Network*, 2023 WL 2644081, at *6. The Complaint offers nothing of the sort. Instead, Plaintiffs continue to rely on a string cite to four ERISA lawsuits that involve much larger plans, different recordkeepers, and different points in time. Defendants explained in their initial motion to dismiss that these allegations do not present meaningful benchmarks. In amending their Complaint, Plaintiffs' only response is to identify *one* new comparator plan —a multi-employer plan that appears to have higher recordkeeping fees than the Plan's—and point to generic data from *The 401k Averages Book*, a publication other courts routinely reject.

**Second**, Plaintiffs' challenges to the Plan's investment options fare no better. Plaintiffs' allegation that Defendants had an imprudent investment monitoring process because one of 54 Plan investments during the putative class period did worse than one fund it replaced—but better than the other fund it replaced—is implausible. So too is the allegation that one fund was too expensive because Defendants replaced it with a fund that cost less. These two limited, hindsight critiques from a six-year period are hardly a "pattern of imprudent behavior" that plausibly allege Defendants failed to monitor the Plan's investments. ECF No. 35, ¶ 72.

As to Count II, Plaintiffs cannot state a "failure-to-monitor" claim without an underlying fiduciary breach, so those claims fail with their primary claims. The Court should dismiss the Complaint in its entirety, with prejudice.

## RELEVANT FACTS AND ALLEGATIONS

**I.      TTEC and the Plan**

TTEC is a customer experience technology and services company.  ECF No. 35, ¶ 19.  The

Plan is one of many benefit programs TTEC voluntarily sponsors for its employees.  *Id*. ¶¶ 2, 20.

The Plan is an individual-account, defined-contribution plan under ERISA, 29 U.S.C. § 1002(34).

As such, "[e]ach participant chooses how to invest her funds."  *Hughes*, 142 S. Ct. at 740.  The

Committee administers the Plan, including overseeing its investment options and engaging Plan

service providers.  ECF No. 35, ¶ 22.

TTEC made a variety of changes to the Plan investment line-up throughout the putative

class period that Plaintiffs never challenged or no longer challenge, including adding target-date

funds and moving to institutional share classes.  *See, e.g*., ECF No. 1-1; ECF No. 1 ¶¶ 65, 82, 85.

In 2018, TTEC moved to a lower-cost S&P 500 Index fund.  ECF No. 35, ¶ 77; Ex. A at 9 (2018

Form 5500); Ex. B at 36-37 (2018 Fee Discl.).[2]  In 2019, TTEC made several changes to the Plan's

investment line-up, including replacing two funds with the T. Rowe Price Overseas Stock Fund

("TRP Overseas Fund").  ECF No. 1-1 at 2-3.

Like all 401(k) plans, there are expenses associated with administering the Plan.  These

include "recordkeeping" fees for administrative services necessary for administering the plan as a

whole.  ECF No. 35, ¶¶ 44-45.  This may include, among other things, certain ministerial tasks,

such as "processing and tracking participant contributions."  *Id*.  However, as Plaintiffs

---

[2] The Court may consider these documents in evaluating Defendants' motion to dismiss because they are referenced in the Complaint and are central to its claims. *See* Am. Compl. ¶¶ 5 n.2, 35 (Plan Form 5500s); *id*. ¶¶ 44, 81 (participant fee disclosures). *See also, e.g*., *Matney*, 2022 WL 1186532, at *3 (considering fee disclosures, Form 5500s, and others); *Johnson v. Providence Health & Servs*., 2018 WL 1427421, at *3 (W.D. Wash. Mar. 22, 2018) (considering Form 5500s, fee disclosures, fund prospectuses, and others).

acknowledge, recordkeepers also typically offer an array of other services, such as call centers, participant education, on-site representatives, or websites. *Id.*

Defendants engaged Merrill Lynch as the Plan's recordkeeper in 2012 and negotiated its fee as a fixed amount per participant. *Id.* ¶¶ 58-59. In 2016, Defendants reduced the fee to $51 per participant, then reduced it again in 2018 to $46. *Id.* ¶ 62. In 2019, Defendants conducted an RFP, and effective January 1, 2020, the Plan replaced Merrill Lynch with T. Rowe Price, reducing the fee again to $45. *Id.* ¶¶ 31, 64. Defendants reduced that fee to $43 in 2022. *Id.* ¶ 67.

## II.    Summary of Plaintiffs' Allegations

Plaintiffs claim Defendants acted imprudently with respect to the Plan's recordkeeping fees and two of its investment options. As to recordkeeping, Plaintiffs say the Plan should have paid no more than $30 to $35 per participant. ECF No. 35, ¶ 68. They base this conclusion on (1) a string cite to four ERISA lawsuits involving plans much larger than the one here that courts have rejected as comparators for recordkeeping-fee claims; (2) a comparison to the recordkeeping fees paid by a multi-employer plan with a very different structure; and (3) a generic assertion that the Plan's fees were "higher than comparably-sized" plans, citing to the *401k Averages Book. Id.* ¶¶ 49, 69-70. Based on these three allegations, Plaintiffs ask the Court to infer that Defendants did not "monitor, benchmark, and negotiate" a reasonable recordkeeping fee. *Id.* ¶¶ 47-71.

As to Plan investments, Plaintiffs claim that Defendants did not prudently monitor the Plan line-up because one of the 54 funds the Plan offered since 2016 (the TRP Overseas Fund) allegedly underperformed, and another (an S&P 500 fund) was too expensive. ECF No. 35, ¶¶ 73, 77-78.

## III.   Certification of Conference

On April 28, 2022, Plaintiffs' counsel contacted TTEC about potential claims against the

company under ERISA.  In response, TTEC produced more than 1,000 pages of Plan-related documents.  Plaintiffs filed the initial Complaint on August 25, 2022, relying on and referencing these documents, and attaching one as an exhibit.  ECF No. 1-1; ECF No. 1 ¶ 44 (referencing "participant fee disclosures"); *id.* ¶ 81 ("Plan's 2020 fee disclosure").  On May 2, 2023, Plaintiffs filed the Amended Complaint, which also relies on the documents.  ECF No. 35; ECF No. 35, ¶ 45 (referencing "participant fee disclosures").  Undersigned counsel for Defendants certify that they conferred with Plaintiffs' counsel about the insufficiency of their allegations on multiple occasions, including during the parties' Rule 26(f) conference on October 10, 2022.

## ARGUMENT

To avoid dismissal, Plaintiffs must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 663, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  While "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context," the Court "need not accept conclusory allegations without supporting factual averments." *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021) (citations omitted).

In the ERISA context, motions to dismiss are an "important mechanism for weeding out meritless claims."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  This is because "the circumstances facing [fiduciaries] will implicate difficult tradeoffs, and courts must give due regard," at the pleadings stage, "to the range of reasonable judgments a fiduciary may make."  *Hughes*, 142 S. Ct. at 742. Courts "therefore focus on the process the fiduciary uses rather than the outcome."  *Kurtz*, 511 F. Supp. 3d at 1196-97.  While plaintiffs often may lack certain

details about a fiduciary's decision-making process, they "have extensive information" about plan investments and fees "because of ERISA's disclosure requirements" and the communications they receive. *Meiners*, 898 F.3d at 822; *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022) (discussing the central role such disclosures and "publicly available [] information" play in allowing a plaintiff to "plead[] a process-based" fiduciary-breach claim under ERISA).

I.      **Count I Does Not State a Plausible Claim for Breach of Fiduciary Duty.**

A.      **Plaintiffs' Recordkeeping-Fee Allegations Do Not Support a Plausible Breach.**

The Complaint alleges no facts about Defendants' process for monitoring recordkeeping fees. Instead, Plaintiffs ask this Court to infer imprudence by pointing to a handful of fundamentally different plans that allegedly paid less for recordkeeping and incomplete data from a book courts have rejected. Far more robust allegations have failed repeatedly in courts within the Tenth Circuit. Here, the Complaint fails to state a viable claim for at least three reasons.

***First,*** Plaintiffs' allegations confirm that Defendants "did manage, and reduce, [recordkeeping] fees over the years," through contract "re-negotiat[ion]." *Matney*, 2022 WL 1186532, at *12. In *Matney*, for example, the court dismissed similar claims where defendants reduced fees from $101 in 2014, to $85 in 2015, to $68 in 2017, and to $53 in 2020. *Id*. at *11. Here, Defendants reduced fees the same number of times over the same number years—and they started from a much lower fee, despite that the plan in *Matney* was more than twice the Plan's size. *See id.* at *5 (the *Matney* plan had "approximately half a billion dollars"); ECF No. 35, ¶¶ 62, 67 (alleging Defendants reduced recordkeeping fees from $51 in 2016, to $46 in 2018, to $45 in 2020, and to $43 in 2022). And even though "nothing in ERISA requires a fiduciary to obtain competitive bids at any regular interval," Plaintiffs concede that TTEC conducted an RFP, which

resulted in switching recordkeepers and lowering the recordkeeping fee. *Matney*, 2022 WL 1186532, at *12 (collecting cases); *see also Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022) (noting the Supreme Court in *Hughes* "did not hold that fiduciaries are required to regularly solicit bids from service providers"); ECF No. 35, ¶¶ 59-61.[3]

**Second**, the Complaint flunks the "meaningful benchmark" requirement.  In *Matney*, the court found that citing a few plans from "case law" did "not provide a meaningful benchmark." *See* ECF No. 35, ¶ 118 n.13, *Matney*, No. 2:20-cv-00275, ECF No. 2; *Matney*, 2022 WL 1186532, at *12.  Here, Plaintiffs use four so-called comparators from case law—one also alleged in *Matney*—that are much larger than the Plan.  Since 2016, the Plan's assets ranged from $120 million to $285 million.  Ex. A, at 3; ECF No. 35, ¶¶ 59, 65.  The plans Plaintiffs cite, by contrast, ranged from $416 million to $3.83 *billion*.  *Id.* ¶ 71.[4]  As Magistrate Judge Varholak put it when recommending the dismissal of similar claims, such comparisons are "utterly inapt." *Jones v. Dish Network*, slip op. at 21 (D. Colo. Jan. 31, 2023), *R & R adopted*, 2023 WL 2644081.  *See also Albert*, 47 F.4th at 579 (affirming dismissal based on comparisons using more details than here).

Defendants pointed out these shortcomings in their original motion to dismiss, and

---

[3] Plaintiffs offer no support for the statement that fiduciaries must conduct an RFP "at least once every two years," and their allegation that "Defendants never issued an RFP during this four-year period" of 2016-2019 is contradicted by their admission that the Plan switched recordkeepers on January 1, 2020 after an RFP. Am. Compl. ¶¶ 31, 59-61. An RFP is not a process that can be completed in a day; Plaintiffs' allegations make clear an RFP was issued before 2020. *Id.*

[4] Ex. C at 4 (Putnam 2009 Form 5500) ($416,474,009); Ex. D at 4 (Mass Mutual 2016 Form 5500) ($2.45 billion); Ex. E at 3 (New Albertson 2015 Form 5500) ($2.45 billion); Ex. F at 13 (MIT 2014 Form 5500) ($3.83 billion). New Albertson is the unnamed "example" referenced in Plaintiffs' citation to *Terraza v. Safeway* citation. Am. Compl. ¶ 60; *Terraza v. Safeway Inc.*, 2019 WL 1059688, at *3 (N.D. Cal. Mar. 6, 2019). And the Putnam citation is to 2008—a reference so outdated that a Form 5500 for that year is not publicly available. Am. Compl. ¶ 60.

Plaintiffs responded by adding a comparison to the Bricklayers and Trowel Trades International Retirement Savings Plan (the "Bricklayers Plan"). Their choice is puzzling. The Bricklayers Plan is a multi-employer, collectively-bargained plan[5] that is sponsored by a $1.8 billion pension fund, shares "administrative" costs with a defined-benefit pension plan, and consists of two "components," the much larger of which is employer-directed (i.e., participants do not choose among investment options, meaning there is less recordkeeping work involved). ECF No. 35, ¶ 71, n.14; Ex. G at 21-22, 27 (Bricklayers Plan 2021 Form 5500); Ex. H at 2 (Bricklayers & Trowel Trades International Pension Fund 2021 Form 5500). TTEC's Plan does not have the economies of scale or cost sharing of the Bricklayers Plan, nor the simplicity of being employer-directed. The "401(k) Component" of the Plan, which, like TTEC's Plan, is participant-directed and offers an array of investment options, charges 70 bps for recordkeeping, which equates to $117.52 per person—far *more* than the Plan's recordkeeping fee.[6] Suffice to say, the Bricklayers Plan is an inapt "apples and oranges" comparator, *Davis v. Washington U. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020), and it does not render Plaintiffs' recordkeeping-fee claim plausible.

Nor does the addition of a citation to the *401k Averages Book* for the proposition that plans with over 2,000 participants and $200 million in assets pay $13 per person for recordkeeping. ECF No. 35, ¶¶ 5, 49. As courts around the country have found, including in this circuit, "the *401k*

---

[5] A multi-employer pension plan is a retirement plan to which more than one employer contributes through an agreement with a union. *See Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 605 (1993). "The contributions made by employers participating in such a multiemployer plan are pooled in a general fund available to pay any benefit obligation of the plan." *Id.*

[6] *See* Am. Compl. ¶ 71, n.15 (citing to page containing "Service Fees and Participant Savings" stating the 401(k) component has a "70 basis points recordkeeping fee"); Ex. I at 1 (Bricklayers 401(k) Plan June 2022 Status Report) (the 401(k) component has $4.6 million in assets and 274 participants). This means there is a 70 basis points fee on $4.6 million in assets ($4,600,000 * 0.70% = $32,200) that is paid by 274 participants, resulting in a recordkeeping fee of $117.52 per participant ($32,200 / 274 = $117.52).

*Averages Book* does not provide a meaningful benchmark." *Matney*, 2022 WL 1186532, at *12 (D. Utah Apr. 21, 2022). *See also Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 280 (8th Cir. 2022) (upholding dismissal of recordkeeping-fee claim and describing *401k Averages Book* as "unhelpful"); *Smith v. CommonSpirit Health*, 2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) (rejecting recordkeeping fee claim relying on *401k Averages Book*), *aff'd*, *CommonSpirit*, 37 F.4th 1160; *McCaffree Fin. Corp. v. ADP, Inc.*, 2023 WL 2728787, at *14 (D.N.J. Mar. 31, 2023) (same). That is because the *401k Averages Book* does not "account[] for any indirect payments," which is how many plans, such as the 401(k) component of the Bricklayers' Plan, pay for recordkeeping. *Gonzalez v. Northwell Health, Inc.*, 2022 WL 4639673, at *10 (E.D.N.Y. Sept. 30, 2022) (*401k Averages Book* "provides little insight").[7] TTEC's Plan does *not* use indirect payments to pay for recordkeeping.

***Third***, to plausibly plead a recordkeeping-fee claim, Plaintiffs must "identify similar plans offering the same services for less." *Dish Network*, 2023 WL 2644081, at *5 (citing *Matousek*, 51 F.4th at 279). This means Plaintiffs must account for "the quality or type of recordkeeping services the comparator plans provided." *Albert*, 47 F.4th at 579; *see also Matney*, 2022 WL 1186532, at *13 (dismissing claims based on "generalizations, assumptions, and unsuitable comparisons"). In other words, Plaintiffs must plausibly allege "that the fees were excessive relative to the services rendered." *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009).

Plaintiffs have not met these standards. They only attempt to compare the services of the

---

[7] Plaintiffs' allegations underscore the unhelpfulness of the *401k Averages Book*. They allege that recordkeeping fees decrease as plan size increases. Am. Compl. ¶¶ 45, 49 (alleging a plan with $100 million pay $15 per participant on average and one with $200 million pays $13 per participant). But the $13 per-participant number does not square with Plaintiffs' five "examples" of prudent plans, which allegedly paid $25 or more for recordkeeping, including the examples with billions in assets. *Id.* ¶ 71.

Plan to the Bricklayers Plan, alleging that both Bricklayers and TTEC's recordkeeping services include "processing. . . participant contributions."  Comp. ¶ 71, n.15.  But the public disclosure on which Plaintiffs rely makes clear that such work is *not* being done by the Bricklayer Plan's recordkeeper.  Ex. G at 27 ("The Bricklayers and Trowel Trades International Pension Plan (United States Plan) *provides various administrative services to the [Bricklayers] Plan, including the processing of contributions to the Plan*.")  (emphasis added).  In other words, the Bricklayers Plan is receiving "various administrative services" from multiple sources, whereas TTEC is only receiving those services from its recordkeeper.   ECF No. 35, ¶ 43, n.9 (alleging the terms "administrative and recordkeeping" are "interchangabl[e]").   This makes an apples-to-apples comparison between the two plans' recordkeeping service providers impossible.

Like the recordkeeping-fee claims dismissed in *Dish Network* and *Matney*, Plaintiffs' allegations are "based on generalizations, assumptions, and unsuitable comparisons."  *Matney*, 2022 WL 1186532, at *13.  And the few concrete facts that Plaintiffs do allege—that Defendants repeatedly reduced recordkeeping fees and switched service providers—foreclose any reasonable inference of a defective fiduciary process.  For these reasons, the Court should dismiss Plaintiffs' implausible recordkeeping-fee allegations.

### B.      Plaintiffs' Two Investment Allegations Do Support a Plausible Breach.

Plaintiffs next claim Defendants "engaged in a pattern of imprudent behavior" as to the Plan's investment options.  ECF No. 35, ¶ 72.  But they do not challenge anything about 52 of the 54 funds the Plan offered since 2016.  Moreover, Plaintiffs acknowledge that Defendants added and removed various funds throughout the putative class period (Aug. 25, 2016 to the present), and Plaintiffs dropped most of the investment allegations from the original Complaint, including

allegations conceding that Defendants worked with an outside investment consultant and had an Investment Policy Statement.   These concessions reflect Defendants' deliberative fiduciary process at work.  And Plaintiffs' two remaining allegations fall well short of the "context-specific" factual allegations that would allow the Court to infer a "pattern of imprudent behavior."

### 1. Plaintiffs' Performance Allegation Does Not Support a Breach.

The Complaint challenges the performance of one fund: the TRP Overseas Fund.  ECF No. 35, ¶ 73.  To state a viable claim, Plaintiffs must allege that Defendants' "investment decisions— in the conditions prevailing at the time, and without the benefit of hindsight—are such that a reasonably prudent fiduciary would not have made that decision as part of a prudent, whole-portfolio, investment strategy that properly balances risk and reward, as well as short-term and long-term performance." *Kurtz*, 511 F. Supp. 3d at 1196 (quoting *Birse*, 2019 WL 1292861, at *4).  As such, "merely showing underperformance of certain funds is insufficient." *Dish Network*, 2023 WL 2644081, at *8; *see also, e.g.*, *Meiners*, 898 F.3d at 823, n.3 ("[T]he choice of a particular fund is not flawed merely because of the existence of one fund that ended up performing better[.]").

Plaintiffs must plead concrete facts reflecting "underperformance" of such magnitude and duration—as compared to a "meaningful benchmark"—that no reasonable fiduciary would have maintained the fund. *See, e.g.*, *Dish Network*, 2023 WL 2644081, at *6-7.  In *Dish Network*, for example, the court found that plaintiffs failed this standard, despite alleging that certain actively-managed funds[8] (1) had an insufficient track record or missed their respective benchmarks throughout the relevant period; (2) were riskier than a passive (i.e., index) option managed by the

---

[8] In active management, "the portfolio manager actively makes investment decisions and initiates buying and selling of securities in an effort to maximize return," whereas passive management tracks a market index. *CommonSpirit*, 37 F.4th at 1163.

same company; (3) were more expensive than that passive alternative; (4) experienced "$5.4 billion in net outflows"; and (5) underperformed "four of the five largest" competitor funds. *Id.* at *8. Plaintiffs' single-paragraph allegation here, which is far less detailed than in *Dish Network*, does not plausibly suggest imprudence. ECF No. 35, ¶ 73.

Specifically, Plaintiffs fault Defendants for replacing the Thornburg Global Opportunities Fund with the TRP Overseas Fund in 2019. But the TRP Overseas Fund replaced *two* prior funds, and Plaintiffs omit that the TRP Overseas Fund has outperformed the other fund it replaced, which held significantly more Plan assets ($6.9 million) than the Thornburg Fund ($600,000) at the time. ECF No. 1-1 at 2-3; Ex. A at 9 (2018 Form 5500). Nor is the Thornburg Fund a "meaningful benchmark," as its strategy includes *both* international and U.S. stocks, while the TRP Overseas Fund is designed to invest *only* in international stocks. *See* Ex. J at 1 (Thornburg Fund is invested 36% in U.S. stocks); Ex. K at 1 (TRP Overseas Fund's objective is to invest "in the common stocks of *non-U.S. companies*") (emphasis added). Funds with "different aims" will of course have varying performance. *See, e.g.*, *Davis*, 960 F.3d at 485. Here, a fund invested in U.S. stocks did better over a period when that asset category outperformed international stocks. Nothing about this suggests an imprudent process for monitoring Plan investments.[9]

### 2.    Plaintiffs' Investment-Fee Allegations Do Not Support a Breach.

Next, Plaintiffs allege that one of Plan's 54 funds, an S&P 500 index fund, was "too expensive" because it cost more than eight basis points (0.08%). ECF No. 35, ¶ 76. But this

---

[9] Plaintiffs allege that Defendants "incautiously accept[ed]" T. Rowe Price's recommendation as "a service provider" to add the TRP Overseas Fund to the Plan, but this is implausible: Defendants added the Overseas Fund *before* T. Rowe Price was hired to provide services to the Plan. Am. Compl. ¶ 73; *compare* ECF No. 1-1 at 2 (reflecting addition of the TRP Overseas Fund on July 1, 2019), *with* Am. Compl. ¶ 31 (alleging T. Rowe Price became the recordkeeper on Jan. 1, 2020).

allegation does not support an inference that Defendants failed to monitor fees; to the contrary, it ignores that in 2018, Defendants replaced that fund with another that had a fee of just three basis points (0.03%)—even lower than what Plaintiffs allege would be prudent.  Ex. A at 9 (2018 Form 5500); Ex. B at 46 (2019 Discl.) (showing 0.03% fee).   Suggesting a "pattern of imprudent behavior" based on the replacement of a fund with a cheaper fund two years into the putative class period is self-defeating.  *See, e.g.*, *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *14 (S.D.N.Y. Oct. 7, 2019) ("[T]he fact that Defendants ultimately removed the [challenged fund] from the set of Plan offerings . . . supports an inference that Defendants acted within the bounds of their duties to the Plan."); *White v. Chevron Corp.*, 2016 WL 4502808, at *11 (N.D. Cal. 2016) ("[T]he allegations in the complaint show that the Plan fiduciaries changed the investment options from year to year," which "supports the inference that the fiduciaries were monitoring the investment options.").

> **3.** **A Challenge to Two out of Dozens of Funds Does Not Suggest a Breach.**

Because the duty of prudence is "context specific," *Matney*, 2022 WL 1186532, at *4, ERISA requires that fiduciaries—and courts evaluating fiduciary conduct—take a "whole-portfolio" view.  *Dish Network*, 2023 WL 2644081, at *4 (citing *Birse*, 2019 WL 1292861, at *3); *see also Kurtz*, 511 F. Supp. 3d at 1196 (holding that "to establish a claim for breach of the duty of prudence a plaintiff must allege . . . that a reasonably prudent fiduciary would not have made that decision as part of a prudent, whole-portfolio, investment strategy"); 29 C.F.R. § 2550.404a-1(b) (enumerating portfolio-based considerations for ERISA's prudence standards).   As *Dish Network*, *Birse*, and *Kurtz* reflect, absent some allegation that a challenged fund was particularly egregious or that fiduciaries had a uniquely flawed process in monitoring such fund, courts reject

imprudence claims that fail to "consider[] the entire portfolio." *Birse*, 2019 WL 1292861, at *3. The reasoning is simple: if fiduciaries used the *same* process for the *same* period of time, and the vast majority of their decisions are unobjectionable, the notion that these same fiduciaries had an imprudent process for overseeing specific funds becomes increasingly implausible.

Here, the implausibility of the notion that Defendants failed to monitor Plan investments is underscored by the fact that, even with the benefit of hindsight, Plaintiffs do not challenge 52 of the 54 Plan investments. *See, e.g.*, *Kurtz*, 511 F. Supp. 3d at 1198 (dismissing claim where plaintiff "points to fifteen funds that she alleges are more expensive than possible alternatives, but there are an additional twelve she takes no issue with at all").

## II.   Plaintiffs' Derivative Failure-to-Monitor Allegations Fail to State a Claim (Count II).

In Count II, Plaintiffs allege that TTEC and the Committee breached their separate duty to monitor other Plan fiduciaries.  ECF No. 35, ¶¶ 92-100.  This duty-to-monitor claim depends on the sufficiency of Plaintiffs' prudence claim (Count I).  Because Count I fails for the reasons above, the monitoring claims fail as well.  *See, e.g.*, *Matney*, 2022 WL 1186532, at *13-14 (dismissing derivative "failure to monitor" claims); *Kurtz*, 511 F. Supp. 3d at 1200 (same).

## CONCLUSION

After amending the initial Complaint, it is clear that Plaintiffs cannot plead around the fundamental facts of Defendants' prudent actions.  For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: May 26, 2023                                     Respectfully submitted,


By: /s/ *Deborah S. Davidson*

Darren E. Nadel
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202-5835
DNadel@littler.com
Tel: 303.362.2861
Fax: 303.362.8230


*Counsel for Defendants*

Deborah S. Davidson
Matthew A. Russell
Samuel D. Block
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, Illinois 60606
Tel.: 312.324.1000
Fax: 312.324.1001
deborah.davidson@morganlewis.com
matthew.russell@morganlewis.com
samuel.block@morganlewis.com

**CERTIFICATE OF SERVICE**

I certify that on May 26, 2023 a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system and automatically copies to all counsel of record.

/s/ *Deborah S. Davidson*
Deborah S. Davidson
Morgan Lewis Bockius LLP
110 North Wacker Drive
Chicago, IL 60606-1511
deborah.davidson@morganlewis.com
Tel.: 312.324.1000
Fax: 312.324.1001