## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

ELIJAH CARIMBOCAS, LINDA
DLHOPOLSKY, and MORGAN GRANT,
on behalf of themselves and others similarly
situated,

       *Plaintiffs*,

v.

TTEC SERVICES CORPORATION, et al.,

       *Defendants*.

Case No. 1:22-cv-02188-CNS-STV

Hon. Charlotte N. Sweeney

Magistrate Judge Scott T. Varholak

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 3

    A.   The Plan has significant market and bargaining power as one of the largest
       defined contribution plans in the country............................................................ 3

    B.   Defendants have not prudently managed the Plan's recordkeeping fees. .............. 3

    C.   Defendants have not prudently managed the Plan's investment options. ............... 5

III. LEGAL STANDARD ......................................................................................... 5

IV.  ARGUMENT ..................................................................................................... 6

    A.   ERISA requires that fiduciaries prudently manage retirement plans'
       recordkeeping expenses and investment options. .................................................. 6

    B.   Plaintiffs state a plausible breach of fiduciary duty claim premised on
       Defendants' failure to properly manage the Plan's recordkeeping costs. ............... 7

         1.   Limited reductions of the Plan's fees are evidence of a fiduciary
            breach and do not support Defendants' motion to dismiss. ........................ 8

         2.   Plaintiffs sufficiently allege benchmarks for recordkeeping fees
            that indicate the Plan paid unreasonably high fees. .................................. 10

         3.   Plaintiffs have identified retirement plans paying lower
            recordkeeping fees than the Plan for the same recordkeeping
            services.................................................................................................. 12

    C.   Plaintiffs state a plausible breach of fiduciary duty claim based on
       Defendants' imprudent management of the Plan's investment options. ............... 13

    D.   Plaintiffs plausibly allege TTEC and the Employee Benefits Committee
       breached their fiduciary duties by failing to monitor other Plan fiduciaries. ....... 15

V.   CONCLUSION ................................................................................................. 15

## I.      INTRODUCTION

Defendants are fiduciaries of the TTEC 401(k) Profit Sharing Plan (the "Plan") whose managerial neglect cost Plaintiffs and other Plan participants millions of dollars in unnecessary fees, which reduced their retirement savings.[1]  Plaintiffs are suing Defendants for breaching their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendants have moved to dismiss this case under Rule 12(b)(6), arguing Plaintiffs have not stated claims upon which relief can be granted.  The Court should deny the motion for three reasons.

*First*, Plaintiffs state a plausible breach of fiduciary duty claim premised on Defendants' failure to prudently manage the Plan's recordkeeping costs.  ERISA fiduciaries must continuously monitor their plans' recordkeeping fees to ensure they remain reasonable.  Yet Defendants failed to compare the Plan's fees to those paid by similar plans for years.  And despite their market power as fiduciaries for one of the nation's largest retirement plans, they did not regularly negotiate with their recordkeepers or solicit bids from alternative recordkeepers to control costs.  Consequently, the Plan consistently paid recordkeeping fees over *twice* as high as comparable plans.  Worse still, Defendants permitted one recordkeeper to charge a duplicative—and wholly unnecessary— "account management fee" on top of its already-excessive recordkeeping fee.  These facts, which must be accepted as true on a motion to dismiss, clearly state a claim for breach of fiduciary duty.

Defendants fail to undermine that claim.  They argue they did prudently manage the Plan's recordkeeping fee, pointing to three years in which it dropped (by $1, $2, and $5 per participant). But these limited and sporadic fee reductions do not show Defendants met their fiduciary obligations.  Even after the reductions, the Plan's recordkeeping fee remained nearly 70% higher than a similar plan's fee.  And these fee reductions did nothing to mitigate the redundant "account

---

[1] References to "TTEC" herein are to the TTEC Services Corporation.  References to the "Rules" are to the Federal Rules of Civil Procedure.

management fee" the Plan paid for years.  Tellingly, Defendants do not mention that fee anywhere in their motion to dismiss.

Defendants also say Plaintiffs do not support their recordkeeping claim because they identify no plans truly comparable to the Plan that pay lower fees for the same services.  Not true.  Plaintiffs have identified multiple comparable plans along with their number of participants, their assets under management ("AUM"), the recordkeeping services they receive, and the recordkeeping fees they pay (each of which pale in comparison to the Plan's fees).

*Second*, Plaintiffs plausibly allege Defendants breached their fiduciary duties by mismanaging the Plan's investment options.  Defendants included, in the Plan, an index fund that imposed excessive fees on participants.  Further, without conducting proper due diligence, Defendants added a fund to the Plan that had historically underperformed the fund it replaced.  While Defendants contest these allegations, they do so by raising factual disputes and pointing to material outside the pleadings.  Thus, they have not identified a basis for dismissal; rather, they have shown discovery is needed to give color to the parties' factual disagreements.

*Third*, Plaintiffs adequately allege that two individual Defendants (TTEC and its Employee Benefits Committee) breached their fiduciary duties by failing to monitor the remaining Defendants (who are members of the Employee Benefits Committee) to prevent their managerial failures.  Defendants argue this claim falls short because, in reality, no such failures occurred.  But they did.  As discussed, Plaintiffs allege—in detail—that Plan fiduciaries neglected their obligation to protect the Plan from excessive recordkeeping fees and costly investment options, resulting in millions of dollars of damages to Plaintiffs and other Plan participants.

For these reasons, and those set forth below, the Court should deny Defendants' motion to dismiss.

## II.     BACKGROUND

### A.     The Plan has significant market and bargaining power as one of the largest defined contribution plans in the country.

TTEC is a Colorado-based company that designs and implements customer service platforms. (Dkt. 39 ("Compl." or the "Complaint") ¶ 19). It has employees across the United States. (*Id.*). To save for retirement, many of those employees participate in the Plan, for which TTEC is the sponsor and administrator. (*Id.* ¶ 20).

The Plan is a "defined contribution" plan. (*Id.* ¶ 37). That means it provides employees with individual investment accounts funded by pre-tax contributions withheld from their salaries. (*Id.* ¶¶ 37, 39). Within their accounts, participants may allocate their contributions among a menu of investment options that the Plan offers, which are selected by TTEC's Employee Benefits Committee. (*Id.* ¶ 40). In addition to selecting investment options, the Employee Benefits Committee is charged with monitoring those investments' performance over time. (*Id.* ¶ 22).

The Plan is one of the largest retirement plans in the country. (*Id.* ¶ 6). It has over 27,000 participants and more than $285 million in AUM. (*Id.* ¶¶ 6, 66). That places the Plan in the top 0.1% of defined contribution plans in the United States measured by AUM and the top 0.4% measured by number of participants. (*Id.* ¶ 6). The larger a retirement plan is, the more attractive it is to recordkeeping services, meaning large plans have substantial "bargaining power to negotiate reasonable fees." (*Id.* ¶¶ 5, 48, 51, 53). Defendants therefore had bargaining power to negotiate reasonable fees for Plan administration and recordkeeping. (*Id.* ¶¶ 5–6, 48, 50). If they exercised that market power in a prudent fashion, the Plan could have negotiated market-rate administration and recordkeeping fees. (*Id.*).

### B.     Defendants have not prudently managed the Plan's recordkeeping fees.

Defendants have failed to prudently oversee the Plan's recordkeeping expenses. Despite

being one of the largest retirement plans in the country, the Plan has paid excessive fees for years.

Merrill Lynch served as the Plan's recordkeeper between 2016 and 2020.[2]  (*Id.* ¶¶ 59, 63).

During that period, the Plan paid a per participant recordkeeping fee ranging from $46 to $51.  (*Id.*

¶ 62).  It also paid a redundant "account management fee" of $8 per participant.  (*Id.* ¶¶ 62, 69).

In 2020, the Plan switched recordkeepers, replacing Merrill Lynch with T. Rowe Price.  (*Id.* ¶ 63).

From 2020 through 2022, it paid a per participant fee ranging from $43 to $45.  (*Id.* ¶¶ 64, 67).

These fees were far higher than the recordkeeping fees paid by similar retirement plans for

the same types of services.  The 401k Averages Book[3] shows that plans equivalent to or smaller

than the Plan paid an average fee of only $13 per participant.  (*Id.* ¶ 5).  Further, publicly available

documents show the Bricklayers and Trowel Trades International Retirement Savings Plan (the

"BTT Plan"), whose AUM and participant base mirrors the Plan, paid fees of $25 per participant.

(*Id.* ¶ 71).  And four other comparable plans, described in case law and identified in the Complaint,

each paid recordkeeping fees around $35 per participant.  (*Id.*).

The Plan's excessive fees stemmed directly from Defendants' managerial failures.  Prudent

fiduciaries must ensure that their plan is paying market-rate fees commensurate with its size in the

marketplace by *regularly* and *continually* monitoring, benchmarking,[4] negotiating, and conducting

Requests for Proposals ("RFPs").  (*Id.* ¶¶ 55–57 (citing sources)).  Between 2016 and 2020,

however, Defendants did not benchmark, did not negotiate with Merrill Lynch, and did not issue a

single RFP from other recordkeepers to solicit lower fees.  (*Id.* ¶ 61).  This violated an industry

---

[2] Merrill Lynch was the Plan's recordkeeper before 2016 as well.  (Compl. ¶ 30).  However, herein, Plaintiffs focus on 2016 through the present because they are suing on behalf of a proposed class with a proposed class period covering that timeframe.  (*Id.* ¶ 79).

[3] The 401k Averages Book "is a commonly used resource guide within the pension industry, which provides comprehensive and accurate data regarding market rate fees."  (Compl. ¶ 5).

[4] This means fiduciaries must compare their plans' fees to those paid by comparable plans, which serve as "benchmark" plans.

"best practice" recommending plan fiduciaries issue RFP bids "once every two years." (*Id.*). Further, Defendants did not even negotiate lower recordkeeping fees when they switched recordkeepers in 2020. (*See id.* ¶ 64). The Plan paid T. Rowe Price $45 fees in 2020 and 2021, a rate only one dollar lower than the Plan's 2019 rate under Merrill Lynch. (*Id.*).

In addition to their failure to negotiate, Defendants failed to monitor and benchmark the Plan's fees. They did not notice the Plan paid Merrill Lynch a superfluous "account management fee." (*Id.* ¶¶ 62–63, 69). And they did not compare the Plan's fees for either Merrill Lynch or T. Rowe Price to those paid by comparable plans on a periodic basis. (*Id.* ¶ 68). Indeed, on information and belief, Defendants did not compare the Plan's fees to other plans at all. (*Id.* ¶¶ 17, 68).

## C.    Defendants have not prudently managed the Plan's investment options.

Defendants also failed to properly vet, and timely remove from the Plan, two imprudent investment options. (*Id.* ¶¶ 73, 77–78). From 2016 to 2018, the Plan offered participants only one equity index fund (the "Index Fund"), which imposed a 0.30% expense ratio on them.[5] (*Id.* ¶ 77). That is nearly four times higher than the average expense ratio of an equity index fund for plans as large as the Plan (0.08%). (*Id.* ¶ 78). Next, in 2019, Defendants added the T. Rowe Price Overseas Stock Fund (the "Overseas Fund") to the Plan without proper due diligence. (*Id.* ¶ 73). It replaced another fund that had outperformed it for years (and continues to outperform it). (*Id.*).

## III.    LEGAL STANDARD

To "survive a motion to dismiss" under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

---

[5] Expense ratios are fees charged by mutual funds and index funds for "investment management services." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740 (2022). They are "calculated as a percentage of the assets the plan participant chooses to invest in the fund." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a motion to dismiss, a court must accept the "factual allegations" in the complaint "as true." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *accord Tyler v. Hennepin Cnty., Minn.*, --- S.Ct. ---, 2023 WL 3632754, at *3 (May 25, 2023) ("[W]e take the facts in the complaint as true."). It must also view those allegations "in the light most favorable to Plaintiffs" and "draw all reasonable inferences" in their favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Thus, a plaintiff "need not definitively prove her injury or disprove the [defendant's] defenses." *Tyler*, 2023 WL 3632754, at *3. So long as plaintiffs have "nudged their claims across the line from conceivable to plausible," a court cannot dismiss their claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## IV.   ARGUMENT

### A.   ERISA requires that fiduciaries prudently manage retirement plans' recordkeeping expenses and investment options.

Defendants are fiduciaries of the Plan under ERISA. (Compl. ¶¶ 20, 22–23 (citing 29 U.S.C. § 1002(21)(A)). Thus, they must "discharge [their] duties with respect to [the Plan] solely in the interest of the participants." 29 U.S.C. § 1104. And they must act "with the care, skill, prudence, and diligence" that "a prudent man acting in a like capacity and familiar with such matters would use." *Id.* These standards of conduct are "the highest known to the law." *Troudt v. Oracle Corp.*, No. 116CV00175REBCBS, 2017 WL 663060, at *5 (D. Colo. Feb. 16, 2017) (citation omitted).

Defendants' obligations under ERISA include a duty to prudently oversee the Plan's recordkeeping expenses. *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1132 (D. Colo. 2020). "Recordkeepers help plans track the balances of individual accounts, provide regular account

statements, and offer informational and accessibility services to participants." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740 (2022).  Plan fiduciaries must continuously monitor, negotiate, and benchmark recordkeeping fees to ensure they are not excessive.  *In re Omnicom Grp. Inc. Erisa Litig.*, No. 120CV4141CMSLC, 2022 WL 18674830, at *17 (S.D.N.Y. Dec. 23, 2022).  This is because expenses like recordkeeping fees "can sometimes significantly reduce the value of an account" in a 401(k) plan. *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015).  Accordingly, cost-conscious management "is fundamental to prudence" because "[w]asting beneficiaries' money is imprudent . . . ." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (citations omitted).

To comply with ERISA, Defendants must also "conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options." *Hughes*, 142 S. Ct. at 742.  Thereafter, they have a "continuing duty" to monitor the investment options and timely remove imprudent ones.  *Id.* (quoting *Tibble*, 575 U.S. at 530).  "Fiduciaries must" also "consider a plan's power . . . to obtain favorable investment products, particularly when those products are substantially identical—other than their lower cost—to products the trustee has already selected." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 329 (3d Cir. 2019).

### B.    Plaintiffs state a plausible breach of fiduciary duty claim premised on Defendants' failure to properly manage the Plan's recordkeeping costs.

The "[f]ailure to investigate and monitor recordkeeping costs on a continuing basis constitutes a breach of fiduciary duty." *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1132 (D. Colo. 2020).  Plaintiffs allege precisely such a failure.  *Supra* Section I.B.  Nevertheless, Defendants ask the Court to dismiss Plaintiffs' recordkeeping claim.  (Dkt. 44 at 11–15).  Defendants argue (1) they complied with their fiduciary obligations because the Plan's fees were reduced on certain occasions, (2) Plaintiffs fail the "meaningful benchmark" requirement, and (3) the "same services" inquiry requires dismissal.  (*Id.*).  Each argument falls short.

       1.     ***Limited reductions of the Plan's fees are evidence of a fiduciary breach and do not support Defendants' motion to dismiss.***

Defendants' argument that they "did manage, and reduce, recordkeeping fees over the years" does not defeat Plaintiffs' claims.  (Dkt. 44 at 12 (citation, quotation marks, and brackets omitted)).  Defendants point out the Plan's fees were reduced three times in seven years.  (*Id.* (citing Compl. ¶¶ 62, 67)).  Contrary to the Rule 12(b)(6) standard requiring the Court to draw all reasonable inferences from Plaintiffs' allegations in favor of Plaintiffs, Defendants ask this Court to infer in their favor that these slight reductions categorically show Defendants met their fiduciary duties.  (*Id.*).  But whether a fiduciary satisfied its obligations under ERISA is a "context-specific inquiry" unsuitable for "categorical rule[s]."  *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740 (2022); *Troudt v. Oracle Corp.*, No. 116CV00175REBCBS, 2017 WL 663060, at \*6 (D. Colo. Feb. 16, 2017) ("[W]hen evaluating whether a fiduciary has fulfilled its role or not, a court must look to the totality of the circumstances.").  Indeed, courts have found evidence of fee reductions can *support* claims for fiduciary breaches.  *Hughes v. Nw. Univ.*, 63 F.4th 615, 632 (7th Cir. 2023).  This is because a fee reduction "suggests that [the] fees were unreasonably high and that means to lower such fees were available."  *Id.*  Defendants' argument that sporadic fee reductions prove they complied with their fiduciary duties fails as a matter of law.

It also fails upon closer examination of the relevant facts.  The fee reductions Defendants cite were year-over-year reductions of $1, $2, and $5, which brought the Plan's per-account fees down from $51 in 2016 to $43 in 2022.  (Compl. ¶¶ 62, 67).  So, even after the reductions, the Plan's fees remained 70% higher than those paid by the BTT Plan ($25 per account) and 230% higher than the applicable market rate from the 401k Averages Book ($13 per account).  (*Id.* ¶¶ 5, 71).  Discrepancies of this magnitude are strong indicators of a fiduciary breach.  *Garthwait v. Eversource Energy Co.*, No. 3:20-CV-00902 (JCH), 2021 WL 4441939, at \*3 (D. Conn. Sept. 28,

2021) (fees "twenty-nine percent higher" than comparator plans' fees supported claim for fiduciary breach). Regardless of the limited fee reductions Defendants accomplished, the Plan's fees remained highly elevated. Particularly where, as here, the Court must view these allegations "in the light most favorable to Plaintiffs" and "draw all reasonable inferences" in Plaintiffs' favor, Plaintiffs are entitled to the "reasonable inference" that this stemmed from a fiduciary breach. *Brooks*, 985 F.3d at 1281.

Defendants cite no authority undermining this point. They rely heavily on *Matney v. Barrick Gold*, No. 2:20-CV-275-TC-CMR, 2022 WL 1186532 (D. Utah Apr. 21, 2022). (Dkt. 44 at 11). *Matney* did cite the defendants' efforts to reduce fees as one of multiple factors indicating they complied with their fiduciary duties.[6] *Matney*, 2022 WL 1186532, at *12. But those efforts were far more extensive—and successful—than Defendants' efforts. The *Matney* defendants renegotiated their plan's trust agreement seventeen times in eighteen years. *Id.* And they cut their plan's fees in half between 2014 and 2020. *Id.* at *11. Here, in contrast, the Plan has only modest reductions in fees—and Defendants do not point to a single thing they said or did to seek reductions. Moreover, *Matney* certainly did not hold that ERISA fiduciaries automatically comply with their duties by accomplishing limited fee reductions, as Defendants imply. *Id.*

Notably, in their defense of the Plan's fees, Defendants never address the "account management fee" they permitted the Plan to pay for years. Plaintiffs plausibly allege this fee was redundant and unreasonable. (Compl. ¶ 69). At minimum, their recordkeeping claim survives on these allegations alone, especially because they appear to be uncontested. *Ramos*, 461 F. Supp. 3d at 1131 (ERISA fiduciaries must ensure their plans "incur *only* costs that are reasonable")

---

[6] Defendants note *Matney* said "nothing in ERISA requires a fiduciary to obtain competitive bids [from recordkeepers] at any regular interval." (Dkt. 44 at 11). Fair enough. But failing to issue RFPs for years, as Defendants did, is "highly significant" evidence of a fiduciary breach. *Ramos*, 461 F. Supp. 3d at 1103.

(emphasis added, citation omitted).

### 2. Plaintiffs sufficiently allege benchmarks for recordkeeping fees that indicate the Plan paid unreasonably high fees.

The Court should reject Defendants' argument that "the Complaint flunks the 'meaningful benchmark' requirement." (Dkt. 44 at 12). That requirement asks litigants alleging a plan pays excessive costs to "provide a sound basis" for concluding the costs are, in fact, too high. *Jones v. Dish Network*, No. 22-CV-00167-CMA-STV, 2023 WL 2796943, at *11 (D. Colo. Jan. 31, 2023). Plaintiffs accordingly provide fee benchmarks from case law, the 401k Averages Book, and the BTT Plan's public documents.[7] (*Id.* ¶ 71). Defendants' attacks on these benchmarks are meritless.[8]

*First*, Defendants' argument that *Matney* found "citing a few plans from 'case law'" can "not provide a meaningful benchmark" is false. (Dkt. 44 at 12). *Matney* found plaintiffs' reliance on certain industry "averages" provided no "meaningful benchmark." *Matney*, 2022 WL 1186532, at *12. The court did not determine, or even consider, whether litigants can use case law to satisfy the benchmark requirement. *Id.* And other courts *have* permitted that practice. *Hagins v. Knight-Swift Transportation Holdings Inc.*, No. CV-22-01835-PHX-ROS, 2023 WL 3627478, at *4 (D. Ariz. May 24, 2023) (plaintiffs met the benchmark requirement where they "cite[d] a handful of other cases and specifically reference[d] one comparison plan" to substantiate their excessive fee allegations). The Court should reject Defendants' criticism of Plaintiffs' use of case law for benchmarking purposes.

---

[7] There are a limited number of benchmarks because Defendants' Plan is one largest defined contribution plans in the United States. (Compl. ¶¶ 6, 66). Because the Plan is in the top 0.1% by AUM and the top 0.4% by number of participants, it has immense market power to negotiate fees. (*Id.*)

[8] They also are premature. Defendants' arguments assert Plaintiffs' benchmark plans are inappropriate comparators, yet courts generally "defer deciding the question of whether two funds are proper comparators until after discovery." *In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *13 (S.D.N.Y. Aug. 2, 2021).

*Second*, Defendants' contention that some of Plaintiffs' comparator plans are "much larger" than the Plan is false. (Dkt. 44 at 12). The four plans in question include one with 6,000 participants, two with 14,000 participants, and one with 32,000 participants. (Compl. ¶ 71). The Plan ranged between 17,000 and 27,000 participants between 2016 and 2021. (*Id.* ¶ 66). Thus, the four plans in question are comparable to or smaller than the Plan, meaning their bargaining position is equal to or weaker than the Plan's, which makes them useful benchmarks for the Plan.[9]

*Third*, Defendants' argument that the BTT Plan is dissimilar from the Plan relies on irrelevant differences between the two plans. (Dkt. 44 at 13 (explaining that, unlike the Plan, the BTT Plan is a "multi-employer, collectively bargained plan")). Defendants do not contest that the two plans are nearly identical in terms of their number of participants and their AUM. (Compl. ¶¶ (alleging the BTT Plan has 21,000 participants and $239 million in AUM, whereas the Plan has 27,000 participants and $285 million in AUM)). Those are the relevant points of comparison because a plan's size controls its bargaining power. *E.g.*, *Garthwait*, 2021 WL 4441939, at *9. The BTT Plan is a useful benchmark for the Plan.

*Fourth*, Defendants' claim that "courts around the country" refuse to rely on the 401k Averages Book misstates the law. (Dkt. 44 at 13). Admittedly, *some* courts have refused to use the 401k Averages Book. *E.g.*, *Matney*, 2022 WL 1186532, at *12. But the weight of authority nationwide recognizes that book provides useful fee benchmarks. *In re Omnicom ERISA Litig.*, No. 20-CV-4141 (CM), 2021 WL 3292487, at *15 (S.D.N.Y. Aug. 2, 2021) (denying motion to dismiss recordkeeping fee claim relying on 401K Averages Book); *Allison v. L Brands, Inc.*, No.

---

[9] Defendants claim the four "case law" plans are larger than the Plan by focusing on AUM as opposed to number of participants. (Dkt. 44 at 12). But the plans' number of participants is the most relevant metric here because the Plan's recordkeeping fees are paid on a per participant basis. (*E.g.*, Compl. ¶ 71). Defendants cite to *Dish Network*, but it is not applicable. (Dkt. 44 at 12). It found a comparison of fee averages to a fee from a single year "utterly inapt"; it did not speak to whether plans with similar participant bases are comparable. *Dish Network*, 2023 WL 2796943, at *9.

2:20-CV-6018, 2021 WL 4224729, at *9 (S.D. Ohio Sept. 16, 2021) (same); *Garthwait*, 2021 WL 4441939, at *8 (same); *Silva v. Evonik Corp.*, No. CV 20-2202, 2020 WL 12574912, at *7 n.16 (D.N.J. Dec. 30, 2020) (same); *Kendall v. Pharm. Prod. Dev., LLC*, No. 7:20-CV-71-D, 2021 WL 1231415, at *11 (E.D.N.C. Mar. 31, 2021) (same); *In re Sutter Health ERISA Litig.*, No. 1:20-CV-01007-JLT, 2023 WL 1868865, at *10 (E.D. Cal. Feb. 9, 2023) (same); *Rosenkranz v. Altru Health Sys.*, No. 3:20-CV-168, 2021 WL 5868960, at *11 (D.N.D. Dec. 10, 2021) (same); *Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2021 WL 1212579, at *9 (E.D. Mich. Mar. 31, 2021) (same); *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1302, 1308 (D. Minn. 2021) (same).  Indeed, the 401k Averages Book is a particularly useful reference here because it evaluates recordkeeping fees for plans significantly smaller than Plan.  Thus, the Plan should have been able to use its stronger bargaining position to negotiate lower fees for its participants than those smaller plans. *See In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *15 (finding the fees reported in the 401k Averages Book useful benchmarks because the plan at issue was "much larger than the ones evaluated in the Averages Book . . . so should have been able to secure a much lower per-participant fee").  This Court should follow the majority trend recognizing the 401k Averages Book's utility. But even if it does not, Plaintiffs provided five other suitable benchmark plans for comparison.

> **3.     *Plaintiffs have identified retirement plans paying lower recordkeeping fees than the Plan for the same recordkeeping services.***

Plaintiffs also satisfy the "same services" inquiry.  That inquiry simply asks whether ERISA plaintiffs allege other plans pay lower fees for the "same" types of services. *Dish Network*, 2023 WL 2644081, at *5.  This is not a demanding requirement.  Courts have found it satisfied where litigants merely "allege what specific services recordkeeping usually includes" and allege "other plans spend less per participant on recordkeeping." *Hagins*, 2023 WL 3627478, at *5.  Plaintiffs allege that and more.  (Compl. ¶¶ 45, 47).  They list the particular services the Plan receives.  (*Id.*

¶ 45).  Then they allege their benchmark plans receive the "same recordkeeping services."  (*Id.* ¶ 71).  Accordingly, Plaintiffs meet the same services requirement.

Defendants argue that, in reality, the BTT Plan receives different recordkeeping services than the Plan.  (Dkt. 44 at 15).  Because this argument contradicts facts alleged in the Complaint, the Court must disregard it.  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Regardless, Defendants' argument relies on a public disclosure that does not stand for the proposition for which Defendants offer it.  The disclosure says the "Bricklayers and Trowel Trades International Pension Plan (United States Plan) provides various administrative services to the [BTT Plan], including the processing of contributions to the Plan."  (Dkt. 44-7 at 27).  But the disclosure does not describe how the United States Plan provides this service.  (*Id.*).  A "reasonable inference" is that it coordinates the service through the BTT Plan's recordkeeper.  *Ashcroft*, 556 U.S. at 678.  Even without this inference, at most, the disclosure shows the BTT Plan's recordkeeper does not perform *one* task (processing contributions) out of many that the Plan's and the BTT Plan's recordkeepers both perform.  (Compl. ¶¶ 45, 47, 71 n.15).  Defendants have not shown Plaintiffs fail the same services requirement.

### C.     Plaintiffs state a plausible breach of fiduciary duty claim based on Defendants' imprudent management of the Plan's investment options.

ERISA fiduciaries "breach their duty" where they fail to properly vet their plans' investment options or "remove an imprudent investment from the plan within a reasonable time." *Hughes*, 142 S. Ct. at 742.  Plaintiffs have stated a breach of fiduciary duty claim by alleging Defendants failed to vet and timely remove (1) the Index Fund, with its excessive expense ratio and (2) the Overseas Fund, which replaced a far superior fund in the Plan.  *Supra* Section II.C.

Defendants' attempt to defend the Overseas Fund does not undermine Plaintiffs' allegations.  Defendants say the Overseas Fund actually replaced two funds, as opposed to one,

and is outperforming one of the two funds. (Dkt. 44 at 17). But they are relying on facts "outside the pleadings," which the Court must ignore. *Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998). Even if Defendants' assertion is true, it does not defeat Plaintiffs' claim. Defendants used the Overseas Fund to replace one fund that had "substantially outperformed" it "in the preceding five-year period." (Compl. ¶ 73). This reflects a failure "to balance the relevant factors and make a reasoned decision" before swapping the Overseas Fund into the Plan, which is a "breach of the prudent man standard of care."[10] *Ramos*, 461 F. Supp. 3d at 1123.

Next, Defendants argue including the Index Fund in the Plan from 2016 to 2018 does not evidence a fiduciary breach. (Dkt. 44 at 17). They do not dispute the Index Fund's expense ratio was excessive (nor could they). (*Id.* at 17–18; Compl. ¶¶ 77–78). Instead, they point out they replaced the Index Fund two years into the proposed class period. (Dkt. 44 at 18). Defendants' argument ignores that including the Index Fund in the first place reflects their flawed decision-making process. *Tibble*, 575 U.S. at 529 (fiduciaries must use "prudence in selecting investments at the outset"). And there is no authority for Defendants' implication that a fiduciary who removes a harmful investment option within two years acts prudently. Whether Defendants removed the Index Fund "within a reasonable time" is a fact-specific inquiry unsuited for resolution at this stage. *Hughes*, 142 S. Ct. at 742; *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Finally, Defendants argue Plaintiffs fail to plausibly allege a fiduciary breach because they have not challenged 52 out of the Plan's 54 investment options. (Dkt. 44 at 18–19). This argument

---

[10] Defendants' citation to *Dish Network* does not help their argument. (Dkt. 44 at 16). *Dish Network* dealt with ERISA fiduciaries' alleged failure to monitor and remove an imprudent investment—it did not concern a fiduciary's flawed process in selecting an investment option in the first place. 2023 WL 2644081, at *6–7. Plus, much of the language in *Dish Network* supports Plaintiffs' claim. *E.g.*, 2023 WL 2644081, at *6 ("Because plaintiffs may lack information about a fiduciary's process before discovery, courts have held that 'even when the alleged facts do not specifically address the process by which a Plan is managed, a fiduciary breach claim may still survive a motion to dismiss if the court can reasonably infer from circumstantial factual allegations that the process was flawed.'").

ignores Plaintiffs' allegations that Defendants failed to prudently monitor *all* of the Plan's investment options, but the "Plan fortunately did not suffer additional losses because of the downturn in 2022 that affected many investment options—imprudent or not." (Compl. ¶ 72).

Defendants' argument also ignores well-established precedent. Plaintiffs may allege a fiduciary breach based on a single investment option because Defendants have a fiduciary duty to "monitor *all* plan investments and remove *any* imprudent ones." *Hughes*, 142 S. Ct. at 740. Indeed, Defendants' own authority shows that an ERISA fiduciary breach claim may be "narrowly focused on one investment." *Birse v. CenturyLink, Inc*, No. 17-CV-02872-CMA-NYW, 2019 WL 1292861, at *3 (D. Colo. Mar. 20, 2019). True, courts will "consider[] the entire portfolio" to see whether the investment was part of a prudent broader strategy. *Id.* But that is irrelevant here; there is no reason to think the Index Fund, with its excessive expense ratio, was part of a prudent strategy when the Complaint shows similar, cheaper index funds would have been available. (Compl. ¶ 78 n.18). And Plaintiffs are entitled to the reasonable inference that selecting the Overseas Fund to replace a fund it historically underperformed was imprudent. *Brooks*, 985 F.3d at 1281.

### D. Plaintiffs plausibly allege TTEC and the Employee Benefits Committee breached their fiduciary duties by failing to monitor other Plan fiduciaries.

Plaintiffs sufficiently allege breach of fiduciary duty claims against TTEC and the Employee Benefits Committee based on their failures to monitor other fiduciaries. (Compl. ¶¶ 92–100). Defendants spend two sentences of their motion to dismiss arguing these claims fail because Plaintiffs do not sufficiently allege *any* Plan fiduciaries breached their duties of prudence. (Dkt. 44 at 19). This argument falls short for reasons already discussed. *Supra* Sections IV.A–C.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint. (Dkt. 44).

Respectfully submitted,

Dated:  June 16, 2023

*/s/ John J. Frawley* _____
**One of Plaintiffs' Attorneys**

Douglas M. Werman (dwerman@flsalaw.com)
Maureen A. Salas (msalas@flsalaw.com)
John J. Frawley (jfrawley@flsalaw.com)
**WERMAN SALAS P.C.**
77 West Washington St., Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Daniel M. Hutchinson
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
dhutchinson@lchb.com

Anne B. Shaver (CO Bar No. 39933)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
1890 Gaylord St.
Denver, CO 80206
Telephone: 415.956.1000
ashaver@lchb.com

*Attorneys for Plaintiffs*