**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| ELIJAH CARIMBOCAS, LINDA DLHOPOLSKY, and MORGAN GRANT, on behalf of themselves and others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>TTEC SERVICES CORPORATION, TTEC SERVICES CORPORATION EMPLOYEE BENEFITS COMMITTEE, EDWARD BALDWIN, K. TODD BAXTER, PAUL MILLER, REGINA PAOLILLO, EMILY PASTORIUS, JOHN and JANE DOES 1-20,<br><br>*Defendants*. | Civil Action No.: 1:22-cv-02188-CNS-STV<br><br>Hon. Charlotte N. Sweeney<br><br>Magistrate Judge Scott T. Varholak |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
<u>PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT</u>**

| | |
|---|---|
| Darren E. Nadel<br>LITTLER MENDELSON, P.C.<br>1900 Sixteenth Street, Suite 800<br>Denver, CO 80202-5835<br>DNadel@littler.com<br>Tel:  303.362.2861<br>Fax:  303.362.8230<br><br>*Counsel for Defendants* | Deborah S. Davidson<br>Matthew A. Russell<br>Samuel D. Block<br>MORGAN, LEWIS & BOCKIUS LLP<br>110 N. Wacker Drive<br>Chicago, Illinois 60606<br>Tel: 312.324.1000<br>Fax: 312.324.1001<br>deborah.davidson@morganlewis.com<br>matthew.russell@morganlewis.com<br>samuel.block@morganlewis.com |

## INTRODUCTION[1]

This lawsuit is implausible for the same reasons that at least four courts within the Tenth Circuit—and dozens more beyond it—have dismissed similar claims for breach of fiduciary duty under ERISA.[2] As TTEC explained in its opening brief, the Complaint here alleges even less than in these other cases and comes nowhere near creating a plausible inference of fiduciary mismanagement. Plaintiffs' Opposition does not confront the fundamental flaws in their claims. If anything, it only confirms this lawsuit rests on generic averments and rank speculation, while seeking to penalize TTEC for taking the very actions Plaintiffs say prudent fiduciaries *should* take.

At bottom, fiduciary-breach claims target a fiduciary's decision-making process, not its end results—a bedrock principal Plaintiffs continue to ignore. MTD at 1-2. They allege nothing about TTEC's actual process for overseeing the Plan. Instead, they ask the Court to infer TTEC acted imprudently based on circumstantial allegations that (1) the Plan paid more for administrative services than what a few other plans paid to unknown vendors for unidentified services in different years, and (2) just two of the 54 investment options the Plan offered since 2016 were subpar because one supposedly could have performed better while another could have been cheaper. Even in isolation, these allegations don't permit a plausible inference that TTEC acted imprudently. And that's before even considering the many undisputed actions TTEC *did take* since 2016, which are alleged in the Complaint and are part of the holistic, "context-specific inquiry that ERISA requires" in assessing Plaintiffs' claims. *Hughes v. Nw. Univ.*, 142 S. Ct. 737,

---

[1] Terms defined in TTEC's opening brief ("MTD") (ECF No. 44) have the same meaning here. Plaintiffs' opposition brief (ECF No. 46) is referred to as their "Opposition" and cited as "Opp."

[2] *See Jones v. DISH Network Corp.*, 2023 WL 2644081 (D. Colo. Mar. 27, 2023); *Matney v. Barrick Gold of N.A., Inc.*, 2022 WL 1186532 (D. Utah Apr. 21, 2022), *appeal filed*, No. 22-4045 (10th Cir. May 20, 2022); *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185 (D. Colo. 2021); *Birse v. CenturyLink, Inc.*, 2019 WL 1292861 (D. Colo. Mar. 20, 2019).

740, 742 (2022).  The Complaint does not state a viable claim and should be dismissed.

*First*, Plaintiffs' recordkeeping-fee claim rests on their conclusion that the Plan's fees were "far higher than" those "paid by similar retirement plans for the same type of services."  Opp. at 4.  But the Complaint says nothing about the "services" any other plan obtained.  Nor does it allege facts substantiating why these other plans are "similar" to the Plan, such that a fee comparison might tell the Court anything meaningful about the prudence of TTEC's conduct.  Plaintiffs' Opposition does not even disagree.  Rather, they say they don't have to allege such facts because it ought to be enough to aver that *all* large 401(k) plans require "the same" services, which *any* vendor can provide at "the same" level.  *Id.* at 12-13.  These are only conclusions (and implausible ones at that), not well-pleaded facts.  And, applying Plaintiffs' logic, administrative services would be nothing but a commodity, whereby only the lowest fees are "prudent."  This contradicts decades of ERISA jurisprudence and Department of Labor guidance instructing that a prudent fiduciary *should* consider the scope and quality of services rather than select a vendor based on cost alone.[3]

Regardless, Plaintiffs have no answer for the many actions TTEC took to reduce Plan costs over the putative class period, even changing its recordkeeper effective January 1, 2020.  This is direct evidence—alleged in the Complaint—that TTEC was not neglecting fees, as Plaintiffs claim.  Plaintiffs try to turn TTEC's actions against it, arguing they constitute an admission that the prior fees were too high or that reductions were not sizeable enough for Plaintiffs' liking.  But courts in the Tenth Circuit and elsewhere recognize the perverse incentives this position would create.  Indeed, Plaintiffs cite no case in which a recordkeeping-fee claim survived dismissal in the

---

[3] *See, e.g.*, *Matney*, 2022 WL 1186532, at *10 (collecting cases); Dep't of Labor, EBSA, *Tips for Selecting and Monitoring Service Providers,* https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/fact-sheets/tips-for-selecting-and-monitoring-service-providers.pdf.

2

face of repeated fee reductions and other actions like those TTEC achieved here.

***Second***, Plaintiffs' investment challenges are about as threadbare as they come. They criticize only one fund based on performance (the TRP Overseas fund), asking the Court to infer imprudence because it allegedly "underperformed" a single alternative. But it is always possible to find some other fund that performed better at times. Regardless, Plaintiffs' preferred fund is not a "meaningful benchmark." That two investments with different strategies perform differently in varying market conditions is not only unremarkable but expected. Plaintiffs do not respond, except to suggest this is a "factual dispute" that must await discovery. They have it backwards, as it is *Plaintiffs'* burden to create an inference of imprudence in the first place—and their inapt performance comparison is the only basis they allege. Regardless, the Court must take a "whole portfolio" view in assessing this claim, and the TRP Overseas fund *outperformed* the other fund it replaced, which held far more of Plan participants' assets at the time TTEC made this decision.

Plaintiffs' only other challenge is that one fund cost too much before TTEC replaced it in 2018 with a fund even less expensive than what Plaintiffs say was reasonable. That Plaintiffs do not challenge the fees for *any* of the 53 other funds the Plan offered since 2016 is alone enough to warrant dismissal. But TTEC's prompt replacement of the only fund they do challenge undercuts any inference that TTEC lacked a process for monitoring fees. Viewing the Plan as a whole, it is not plausible to infer from what Plaintiffs allege that TTEC's fiduciary process was imprudent.

For these reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

## ARGUMENT

### I.     Plaintiffs Have Not Stated a Plausible Recordkeeping-Fee Claim.

The premise of Plaintiffs' recordkeeping-fee claim is that merely alleging a few other plans paid less is enough to create a plausible inference of imprudence. But, as TTEC explained, courts

3

within the Tenth Circuit and elsewhere reject such claims where the complaint (1) does not "identify similar plans offering the same services for less," (2) relies on "inapt" benchmarks, or (3) concedes the fiduciaries made repeated fee reductions. *Dish Network*, 2023 WL 2644081, at *5 (citing *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 280 (8th Cir. 2022)). Here, Plaintiffs' Opposition confirms that all three flaws apply and are fatal to the Complaint.

***First***, Plaintiffs concede they must point to "similar plans offering the same services for less." *Id.* But they do not allege any *facts* about the services their "case law" comparator plans received in exchange for the fees those plans allegedly paid. Instead, Plaintiffs say they don't have to offer such allegations, because it is enough to simply declare that these other plans used the "same services." Opp. 12-13. Plaintiffs cite no support in the Tenth Circuit for this proposition, which contradicts their burden to plead "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If they were right, any plaintiff could state a plausible claim by finding a few plans that allegedly paid less and asserting they all used "the same" services, with no facts substantiating that conclusion. *See, e.g.*, *Dish Network*, 2023 WL 2644081, at *5.[4]

Here, the Complaint alleges nothing about the services used by four plans in the ERISA "case law" Plaintiffs cite (in fact, nothing suggests they have any idea what services were at issue).

---

[4] *See also Kruchten v. Ricoh USA, Inc.*, 2023 WL 3026705, at *2 (E.D. Pa. Apr. 20, 2023), *appeal filed*, No. 23-1928 (3d Cir. May 23, 2023) (rejecting similar claims, finding that "vaguely alleging recordkeeping services are fungible does not plausibly allege a breach," and "[i]f 'bare allegations' about differences in fees and corresponding services were sufficient, any plaintiff could access discovery by so pleading") (citations omitted); *Mateya v. Cook Group Inc.*, No. 1:22-cv-01271-RLY-TAB, ECF No. 52 at 8 (S.D. Ind. June 16, 2023) ("[A]lleging every recordkeeper in the national market provides the same services and that the Cook Plan is more expensive than other plans is not sufficient to state a claim that the Cook Plan paid an unreasonable amount for the services it received."); *Singh v. Deloitte LLP*, 2023 WL 4350650, at *4 (S.D.N.Y. July 5, 2023) (denying as futile motion to amend complaint and finding the allegation that all recordkeepers provide the same services is "conclusory" and does "not consider that different plans may offer different services, or that different plans may provide a higher level of service than competing plans").

4

Nor do Plaintiffs allege what services are covered by the fees in the *401(k) Averages Book*. And the only effort they make to compare the TTEC Plan to the Bricklayers Plan actually undercuts their claim, as TTEC's Motion explained. MTD at 9, 11. Plaintiffs admittedly know nothing about the Bricklayers Plan beyond public disclosures. Am. Compl. ¶ 71. Yet they ask the Court to accept their allegation that it uses the "same services" as the Plan, despite another public disclosure making clear that a related pension plan—in addition to the recordkeeper—provides "various administrative services" to that plan. MTD at 11. Moreover, the 401(k) component of the Bricklayers Plan paid more than *$117 per participant* for recordkeeping—a number Plaintiffs do not dispute and which is more than double what TTEC's Plan paid. *Id.* at 9. Simply put, without some factual basis for finding that the comparator plans used comparable services, it is not plausible to infer from a fee differential that TTEC acted imprudently in overseeing Plan costs.

***Second***, Plaintiffs also must substantiate a "meaningful benchmark" showing the Plan's recordkeeping fees were so high that the Court can reasonably infer TTEC was not monitoring costs. MTD at 12. Plaintiffs' proffered benchmarks—the *401k Averages Book*, four plans at issue in "case law," and the Bricklayers Plan—do not come close to clearing this bar.

As TTEC explained, numerous courts, including in the Tenth Circuit, reject the *401k Averages Book* as a sound basis for such fee comparisons. It addresses only "direct compensation," while many plans (*e.g.*, the Bricklayers Plan) use "indirect compensation" to pay recordkeeping costs. MTD at 9. Plaintiffs' Opposition cites other courts supposedly endorsing this source, but *none* are from within the Tenth Circuit—and some are no longer good law. Opp. at 11.[5] In *Matney*,

---

[5] For example, Plaintiffs' Opposition (at 11-12) cites district court cases from within the Eighth Circuit that were decided before the Eighth Circuit itself rejected the *401k Averages Book* as "unhelpful" when affirming dismissal of similar ERISA recordkeeping-fee claims. *Matousek*, 51 F.4th at 280.

5

by contrast, the court found the "401k Averages Book does not provide a meaningful benchmark." 2022 WL 1186532, at *12.  The Court should reach the same conclusion here, particularly given that the fees from the *401k Averages Book* are inconsistent with the Complaint's other allegations.  Plaintiffs say recordkeeping costs should decline as plan size increases—and yet the only plans they cite, which are much larger, pay double or more than the $13 fee reported in the *401k Averages Book* for plans with $200 million in assets.  MTD at 10 & n.7.

Plaintiffs also do not substantiate the plans from case law as meaningful comparators.  Their Opposition misses the point.  TTEC does not contend that case law can never offer context for a recordkeeping-fee claim, but rather that the Complaint here says nothing about these four plans, including services received, the years in question, or any other circumstances to suggest comparing their fees to the Plan will shed light on TTEC's fiduciary process.  In *Matney*, the court considered one of the same cases cited here, noting it in its ruling and rejecting analogous claims as implausible.  MTD at 12; *compare Matney*, No. 2:20-cv-00275, ECF No. 21, ¶ 125 n.18 (citing *Gordon v. Mass Mutual*), *with* Compl. ¶ 71 (same).  Likewise, the Complaint here cites only what each of the four case law comparators paid in one year (2008, 2015, 2016, or 2019), which says little to nothing about what the Plan should have paid from 2016 to 2023, a temporal problem like the one that rendered such comparators "inapt" in *Dish Network.*  2023 WL 2644081, at *5.

Finally, Plaintiffs' only justification for citing the Bricklayers Plan is that it has a similar number of participants and total assets as the Plan.  Opp. at 11.  But this does not automatically make it a "meaningful benchmark" for evaluating the particular services the Plan received or the fees it paid.  Plaintiffs do not respond to various other differences with the Bricklayers Plan, nor do they dispute that its 401(k) portion paid more than $117 for recordkeeping, far more than the

6

Plan paid and well above what Plaintiffs claim was a reasonable fee. MTD at 9; Am. Compl. ¶ 67.

***Third***, while these flaws are sufficient to dismiss this claim, TTEC's undisputed fee reductions since 2016 foreclose any plausible inference that it was not monitoring recordkeeping fees. Plaintiffs mischaracterize TTEC's argument, which does not ask the Court "to infer in their favor." Opp. at 8. No inferences are needed. Rather, the Court's task is to perform a "context-specific inquiry" that accounts for all circumstances relevant to Plaintiffs' claim. TTEC's undisputed actions in reducing fees are part of this "context"—and they belie Plaintiffs' assertions that TTEC did not "monitor" Plan fees or "regularly negotiate with [its] recordkeeper." Opp. at 1.

Plaintiffs' feeble attempt to differentiate *Matney* illustrates the point. In that case, the court found plaintiffs did "not create[] a reasonable inference" of imprudence where defendants reduced fees from $101 in 2014, to $85 in 2015, to $68 in 2017, and to $53 in 2020. 2022 WL 1186532, at *12. TTEC similarly reduced the Plan's fees from $51 in 2016, to $46 in 2018, to $45 in 2020, and to $43 in 2022. MTD at 7. While Plaintiffs try to distinguish *Matney* because defendants in that case "cut their plan's fees in half," Opp. at 9, this only confirms why the facts alleged here are far *weaker* than those *Matney* rejected. Plaintiffs argue fees should decline as plan size increases (Am. Compl. ¶¶ 5-6, 48-49), yet the TTEC Plan—despite being half the size—paid less *at all times* than the larger plan in *Matney* ever did. MTD at 7-8. Fee reductions do not happen by luck; they happen through negotiation. *Matney* supports the intuitive notion that, absent direct allegations of process flaws, frequent reductions foreclose an inference of a failure to monitor those same fees.

Plaintiffs' arguments also improperly seek to use the pleading standard as both sword and shield. They argue TTEC did "not point to a single thing they said or did to seek reductions," but TTEC is of course limited to the Complaint's allegations. Opp. at 9. However, even Plaintiffs

7

concede, as they must, that the Plan changed recordkeepers effective January 1, 2020. As TTEC's Motion pointed out, this sort of change typically occurs after a request for proposal ("RFP") from prospective vendors, which is just what occurred here. Plaintiffs play games by asserting that TTEC did not conduct an RFP "[b]etween 2016 and 2020." Opp. at 4. But they know better, and the suggestion that TTEC "did not negotiate with" its prior recordkeeper or "issue a single RFP" is contradicted by the Complaint's own admissions that recordkeeping fees declined in 2018 and 2020, and the Plan changed vendors in 2020. Am. Compl. ¶¶ 30-31, 62, 67.

Finally, Plaintiffs' arguments about the "account management fee" are a diversion. The Complaint does not allege *anything* about the services or costs this fee was used to cover. Offering a 401(k) plan requires various expenses other than recordkeeping, such as consulting, legal, auditing, and accounting. Not even the Complaint alleges this fee was part of the recordkeeping costs Plaintiffs challenge, and participant disclosures confirm it was distinct from Merrill Lynch's contractual fee. *See* Am. Compl. ¶ 63; ECF No. 44-2 at 23, 33 (participant disclosures). Plaintiffs cannot have it both ways. If they want to tack on this distinct $8 fee when comparing the Plan to others, then they also must establish the fees cited for those other plans also covered the same services. And they likewise must factor in TTEC's elimination of this $8 fee in 2020 when arguing that TTEC never reduced fees by more than $5 at a time. They have not done so, and this fee is simply irrelevant. In the end, Plaintiffs' recordkeeping-fee claim rests on nothing but conclusions, inapt comparisons, and speculation. It should be dismissed accordingly.

**II.     Plaintiffs Have Not Stated a Fiduciary-Breach Claim Regarding Plan Investments.**

TTEC's Motion explained several reasons why Plaintiffs' investment-related allegations do not support their assertion that TTEC engaged in a "pattern of imprudent behavior." MTD at 11-15 (citing Am. Compl. ¶ 72). Plaintiffs' Opposition dedicates two pages to these already-

limited claims, largely sidestepping TTEC's arguments and case law in the Tenth Circuit, while confirming they cannot sustain a plausible inference of an imprudent monitoring process.

*First*, as to the TRP Overseas fund, TTEC explained that "merely showing underperformance of certain funds is insufficient" to plausibly suggest imprudence. *Dish Network*, 2023 WL 2644081, at *8. Plaintiffs do not respond, much less point to Complaint allegations going beyond supposed underperformance. Indeed, they say nothing specific to the TRP Overseas fund or their lone comparator at all. Their performance-based theory fails for this reason alone.

Nor have Plaintiffs plausibly alleged "underperformance" in the first place, which requires comparing the TRP Overseas fund to a "meaningful benchmark." MTD at 13. Here, too, Plaintiffs do not respond. Comparing the TRP Overseas fund to one other fund (the Thornburg Global Opportunities Fund) is not an apt comparison, as the latter invests in U.S. stocks while the former does not. *Id*. That two funds with "different aims" performed differently does not suggest TTEC acted imprudently. *See Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020).

Finally, Plaintiffs concede the Court must take a "whole-portfolio" view in assessing their claim and do not deny that the TRP Overseas fund replaced two funds—while *outperforming* the fund that held far more assets at the time. MTD at 13. And yet they ask the Court to "ignore" the Dreyfus International Equity Fund because they did not mention it in their pleading. Opp. at 14. But Plaintiffs cannot legitimately deny a fund change explained in an exhibit to their own initial complaint. ECF No. 1-1 at 3-4 (participant disclosure stating that investments in the Thornburg Global Opportunities Fund and the Dreyfus International Equity Fund "will be transferred to" the TRP Overseas fund). And, here again, TTEC's conduct reflects a deliberative decision-making process in action, by transferring the vast majority of assets held in these two funds to an

9

investment that has outperformed the prior fund. Nothing in the Complaint sustains a viable claim.

***Second***, Plaintiffs' only other investment-related claim alleges that one fund should have cost 8 bps (0.08%), not 30 bps (0.30%). That Plaintiffs do not challenge TTEC's oversight of fees for *any* of the other 53 funds in the Plan since 2016 is enough to dismiss this claim, as TTEC's undisputed diligence in managing all other Plan fees belies any plausible inference of an imprudent process for doing so with respect to the only fund Plaintiffs challenge. Regardless, TTEC's actions once more undercut the inference Plaintiffs ask the Court to draw. TTEC replaced the challenged fund in 2018 with one that cost 3 bps (0.03%), less than half of what Plaintiffs say is reasonable. MTD at 14-15. Plaintiffs' only attempt to defend this theory again mischaracterizes TTEC's argument. Opp. at 14. TTEC does not contend that a fiduciary "who removes a harmful investment option within two years" is automatically prudent or immunized from liability. *Id.* Rather, this is a *process*-based claim, and changes like those Plaintiffs would prefer to ignore—as well as TTEC's successful oversight of the fees for the 53 other funds the Plan offered during the putative class period—are a reflection of a deliberative fiduciary process at work. In any event, nothing about this single fund was so unreasonable as to suggest imprudence. MTD at 14-15.

At the end of the day, Plaintiffs ask the Court to infer TTEC engaged in a "pattern of imprudent behavior" based on alleged problems with only two of 54 funds the Plan offered over a period of more than six years. Viewing the Complaint as a whole, Plaintiffs do not create a plausible inference that TTEC failed to monitor any Plan investment option.

## CONCLUSION

TTEC respectfully request that the Court dismiss the Amended Complaint with prejudice.[6]

---

[6] The parties agree that if the Plaintiffs' underlying breach of fiduciary claim fails (Count I), so too does their derivative duty to monitor claim (Count II). *See* MTD at 1; Opp. at 15.

Dated: July 7, 2023

Respectfully submitted,

By: /s/ *Deborah S. Davidson*

Darren E. Nadel
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202-5835
DNadel@littler.com
Tel:  303.362.2861
Fax:  303.362.8230

*Counsel for Defendants*

Deborah S. Davidson
Matthew A. Russell
Samuel D. Block
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, Illinois 60606
Tel: 312.324.1000
Fax: 312.324.1001
deborah.davidson@morganlewis.com
matthew.russell@morganlewis.com
samuel.block@morganlewis.com

**CERTIFICATE OF SERVICE**

I certify that on July 7, 2023 a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system and automatically copies to all counsel of record.

/s/ *Deborah S. Davidson*
Deborah S. Davidson
Morgan, Lewis & Bockius LLP
110 North Wacker Drive
Chicago, IL 60606-1511
deborah.davidson@morganlewis.com
Tel:  312.324.1000
Fax:  312.324.1001